■ EFFRAIM BAEZ et al., Appellants, v CITY OF NEW YORK, Respondent, et al., Defendant. [717 NYS2d 584] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered July 24, 1998, which, upon defendant's motion at the conclusion of plaintiffs' case, dismissed the complaint, affirmed, without costs.

Plaintiff alleges that he fell and was injured at the corner of Murray Street and Broadway. Although he originally claimed that the accident was caused by a jagged piece of protruding metal, at trial he sought to show that his fall resulted from the excessive slope of the pedestrian ramp. This, it was asserted, was a condition of which defendant was aware.

The trial court properly dismissed the complaint since plaintiff failed to make a prima facie showing that defendant City had written notice of or created any defect in the sidewalk curb (*Kelly v City of New York*, 172 AD2d 350; *see also, Poirier v City of Schenectady*, 85 NY2d 310, 315). To the extent that plaintiffs may have been entitled to an adverse inference pertaining to this issue, as argued by the dissent, they failed to raise this argument either on appeal or before Supreme Court. Contrary to the suggestion made by the dissent, an adverse

inference is distinguishable from a rebuttable presumption (*George Foltis, Inc. v City of New York*, 287 NY 108, 121; Prince, Richardson on Evidence § 3-102 [Farrell 11th ed]). The latter shifts the burden of proof while the former only permits the trier of fact to reach a conclusion; a rebuttable presumption has a required effect, while the effect of an adverse inference is only permissive (*compare, Malacow v Consolidated Rail Corp.*, 167 AD2d 123, *lv denied* 77 NY2d 807 [proof required to obtain adverse inference], *with Wisniewski v New York Cent. R. R. Co.*, 228 App Div 27, 31-32 [distinguishing between burden of proof, based on policy judgment, and "presumption" or inference, based on logical deduction from evidence]). Plaintiffs did not prove that the documents they sought actually existed. This record simply does not furnish proof from which a conclusion should or could be drawn that any permit for the curb cut would have been issued during the relevant time frame. Concur—Lerner, J. P., Andrias, Buckley and Friedman, JJ.

Saxe, J., dissents in a Memorandum as follows: It is axiomatic that to prevail in a civil action a plaintiff must prove each element of an asserted cause of action. However, there are times when a defendant's own inaction or omission, such as a failure to produce demanded, relevant records, may entitle a plaintiff to an inference that such evidence, if produced, would support the plaintiff's position. To the extent that the plaintiff's proof is lacking in this case, his inability to establish the City's responsibility for the claimed defect was directly attributable to the City's inexplicable inability to provide records that, in all probability, were at some point in its possession. So, in the interest of fairness, the plaintiff's case should have been allowed to be decided by the jury, assisted by an adverse inference charge in favor of the plaintiff regarding the records necessary to prove his case. The majority's affirmance of the dismissal of the plaintiff's case amounts to an inappropriate removal of this case from the jury's consideration. Accordingly, I would reverse the dismissal of the plaintiff's claims at the close of his case, and remand for a new trial.

Plaintiff Effraim Baez, in this slip and fall case, contended at trial that on May 25, 1989, while he was walking along the public sidewalk near the southwest corner of Murray Street and Broadway, he fell on a sidewalk's "pedestrian ramp"[1] or curb cut due to a defect in its design and construction. At trial he identified the defect that was the cause of the fall as the

---

**1.** "Pedestrian ramp" is the term used in New York City Rules and Regulations for the portion of the corner of the sidewalk that slopes down to the level of the roadway (*see*, 34 RCNY 2-09).

excessive slope at the side of the pedestrian ramp built into the curb at that corner.

Plaintiff's expert, engineer Michael Kravitz, testified that the flare, or slope, on the side of the pedestrian curb cut was too steep, deviating from good and accepted engineering standards, as well as from the standards published by the New York City Department of Transportation.

Plaintiff's final witness, appearing in response to the plaintiff's subpoena, was Aida Vasquez, a records searcher for the New York City Department of Transportation. Ms. Vasquez testified that she personally made a search of both paper and computer records for any references to the subject pedestrian ramp, encompassing the years 1970-1998, but found no information.

Holding that there was no evidence of affirmative negligence or prior written notice of the alleged defect, the trial court granted the motion of defendant the City of New York (the City) to dismiss at the close of the plaintiff's case. This appeal ensued.

In my view, it was improper to dismiss the plaintiff's case. On a motion to dismiss the complaint at the close of the plaintiff's case, the trial court must "view the evidence in a light most favorable to plaintiffs, giving them the benefit of every inference which could reasonably be drawn from the facts presented at trial and resolving all questions as to witnesses' credibility in plaintiffs' favor" (*Cruz v Madison Detective Bur.*, 137 AD2d 86, 89 [citation omitted]). Plaintiff's evidence was sufficient to make out a prima facie case, when the evidence is viewed in the light most favorable to him and he is accorded every favorable inference.

While the City emphasizes that prior to trial, Mr. Baez made statements describing somewhat differently the nature of the alleged defect, these differences are irrelevant here. Contradictions between a witness's narrative and his prior statements present a strong basis for cross-examination and a challenge to the witness's credibility; but, such a contradiction does not invalidate the witness's testimony as a matter of law (*see, Deering v Metcalf*, 74 NY 501).

Nor was the plaintiff's case rendered insufficient by his expert's failure to testify as to causation. The testimony of the plaintiff's expert was offered solely to show that the structure of the pedestrian ramp was defective in that it violated applicable standards. The issue of whether the plaintiff's fall was caused by the defect was a question upon which this engineer had neither knowledge nor expertise. While some experts'

opinions must include an assertion that the defect was a proximate cause of the injury, such as medical experts who offer an opinion as to whether a physician's departure from accepted practice was a cause of the plaintiff's injury (*see, Evans v Holleran*, 198 AD2d 472), the plaintiff's engineering expert had no particular expertise or information to offer as to the producing cause of the plaintiff's injury. Indeed, he would have had no way of knowing whether the plaintiff's fall was caused by a banana peel rather than the steep slope of the ramp's flare. Plaintiff himself, as well as any other individual who observed the incident, was in the best position to testify as to what precipitated his fall. This he accomplished with his own testimony and that of eyewitness Sharon Saeed, who both testified that the plaintiff fell to the ground after he placed his foot on the slope of the curb cut. This testimony created an issue of fact as to liability and causation, and consequently those issues should have been left to the jury.

The trial court's reasoning in dismissing the complaint was that the plaintiff had failed to offer proof that defendant City (1) had prior written notice of the defect, and (2) was responsible for causing or creating the defect. Neither ground justifies dismissal.

Of course, had the claimed sidewalk defect been of the typical variety, such as a hole or crack in the pavement, or a raised portion of sidewalk, the absence of prior written notice would have precluded the lawsuit, pursuant to the so-called "Pothole Law" (Administrative Code of City of NY § 7-201). The Pothole Law, enacted in 1980 in an attempt to limit trip-and-fall claims against the City (*see, Proposed Local Law Aimed at Curbing Suits Against City*, NYLJ, Aug. 10, 1979, at 1, col 3), imposes a condition precedent on would-be plaintiffs seeking to bring such lawsuits against the City, that the City have received, at least 15 days before the accident, prior written notice of the defect.

However, an absence of prior written notice of the defect is irrelevant here. Just as a plaintiff need not offer proof on the element of notice where it is established that the defendant is responsible for affirmatively creating a dangerous or defective condition (*see, Safran v Man-Dell Stores*, 106 AD2d 560, 562), the prior written notice rule is inapplicable where the municipality affirmatively created the defective condition (*see, Cruz v City of New York*, 218 AD2d 546; *Kelly v City of New York*, 172 AD2d 350; *Lacey v Horan*, 119 AD2d 806, 807; *see also, Poirier v City of Schenectady*, 85 NY2d 310, 315; *Monteleone v Incorporated Vil. of Floral Park*, 74 NY2d 917, 919).

In the matter before us, Mr. Baez relies upon this "cause-or-create" theory of liability, rendering immaterial the failure to offer proof on the issue of notice. The only issue is whether he made a sufficient showing that the City affirmatively created the defect claimed here. The City contends, and the majority holds, that the plaintiff failed to satisfy his burden of proof with evidence that it was the City that performed the construction work on the pedestrian ramp. I disagree; under the circumstances, the absence of affirmative proof that the City or its agents performed the work is not enough to preclude a finding of liability.

It is undisputed that the City owns and maintains control of the sidewalk; indeed, in the City's answer it admitted exclusive ownership and control over the sidewalk in question. It has been held that "a municipality's admitted ownership and maintenance of a road is sufficient to raise [a] question of fact [as to whether the municipality designed or constructed the road]" (see, Good v County of Sullivan, 198 AD2d 706, 708). Thus, the City's admission of ownership of the sidewalk is sufficient to prevent dismissal.

Further, the City has a nondelegable duty to maintain its sidewalks in a reasonably safe condition (see, City of New York v Kalikow Realty Co., 71 NY2d 957). While New York City Charter § 2904 imposes on the owners of adjacent property the duty to repair defective sidewalks, the Commissioner of Transportation of the City of New York is authorized to perform the necessary sidewalk repairs and then recoup the cost of the work from the property owner (see, Administrative Code of City of NY § 19-152). Additionally, in this instance, the abutting landowner, initially named as a co-defendant, obtained summary judgment dismissing the claim as against itself, upon undisputed proof that it had nothing to do with the construction of the sidewalk in question. There is no basis to conclude that any other entity would have had any reason to install a pedestrian ramp in the sidewalk.

As a practical matter, the City's ownership of the sidewalks, and the limited nature of the obligations of the abutting landowner, means that sidewalk construction is ordinarily performed by the City or by contractors hired by the City. Moreover, before a contractor constructs a new sidewalk, the contractor must first obtain from the City a permit to perform the work, and must file plans with the City's Department of

Transportation (*see*, 34 RCNY 2-09).[2] Consequently, regardless of who is responsible for constructing the pedestrian ramp in question, unless the Department of Transportation performed the work itself, the City ordinarily would be expected to have in its possession the related paperwork, such as plans or an application for a permit.

The complete absence of records responsive to the plaintiff's subpoena, which sought documents such as specifications, drawings, contracts, or violations related to the pedestrian ramp at the southwest corner of Broadway and Murray Street, from 1960 to the date of the accident, May 25, 1989, is puzzling. There can be no question that the pedestrian ramp in question was constructed within that time frame. In fact, the existence of the pedestrian ramp at the curb, in all likelihood, reflects that it was constructed after the enactment in 1975 of the New York City rule requiring that pedestrian ramps be constructed for the assistance of people with physical disabilities whenever new sidewalks or curbs were constructed (*see*, Lancer, *Persons with Disabilities: Two City Efforts: Curb Ramps and Preferred Sources*, 3 City L 125; *and see*, 34 RCNY 2-09; *see also*, Highway Law § 330 [enacted in 1975]). Nor, from the photographs submitted, was it the type of minimal work that might have proceeded without the need for permits. Given the central location, near City Hall in downtown Manhattan, one has to wonder how, inasmuch as the work was unquestionably performed, there can be no record of it. While it is conceivable that paving work may on occasion be performed without the required paperwork in some quiet corners of this sprawling city, it is virtually inconceivable that work could proceed at the site in question without the requisite permits or contracts.

Moreover, review of the testimony of Ms. Vasquez, the records searcher, reveals more questions left open than resolved, as to the absence of documents responsive to the plaintiff's subpoena. While counsel's phrasing of questions may have been inartful, his examination of Ms. Vasquez was so strictly circumscribed by the trial court that it cannot be said with certainty whether the absence of responsive records was caused by the non-existence of documents or by a limitation in the search.

We should recognize the difficulty in independently substantiating the entity responsible for sidewalk work, the substantial likelihood that the City was the party responsible for the design

---

**2.** The regulation creates an exception for work involving an area of 25 square feet or less, approximately the size of one flag of pavement.

and construction of this pedestrian ramp, and the likelihood that if some other party was responsible, the City would have had in its possession the records of the construction. With these considerations in mind, it is appropriate and necessary to "level the playing field" to some extent.

As a general rule, when an opponent fails to produce a necessary document, the other party may be granted an adverse inference charge, permitting the jury to infer that the document would be adverse to the interest of the party who should have produced it, *only if* (1) it is shown that the document actually exists and is under the other party's control, and (2) the adverse party has no reasonable explanation for not producing it (*see*, PJI 1:77; *Cidieufort v New York City Health & Hosps. Corp.*, 250 AD2d 720). Of course, the rule would not normally apply where a plaintiff was unable to definitively demonstrate that such documents actually existed. Nevertheless, as I have noted, it is very likely that the City was responsible for the work, and that if it was not, it would have had in its possession records of the construction performed by a third party.

Under these circumstances, the City should not be permitted to avoid liability based upon its own inability to locate records regarding the ramp alleged to be improperly designed and constructed. Rather, the plaintiff's position is sufficiently analogous to that of a litigant whose opponent demonstrably had been in possession of a necessary document but, unjustifiably, cannot or will not produce it. Therefore, in view of the likelihood that the City itself is either legally responsible for the defective condition, or in possession of documentation proving another entity responsible, it is necessary and appropriate to permit the jury to draw an adverse inference against the City, finding it to have been responsible for the creation of the alleged defect.[3] In the absence of such an inference, the plaintiff is at the mercy of the City, whose own records are the only means by which to prove the element of responsibility. Indeed, a good argument can be made that in view of the advantage possessed by the City, a rebuttable presumption should be applied instead of a mere permissible inference, by which the City or its agents would be presumed to be responsible for the sidewalk work, unless the City came forward with proof tending to show that some other entity directed or performed the work.

---

**3.** There is no indication that the absence of the sought records was attributable to a standard disposal procedure for antiquated records (*compare*, *Scaglione v Victory Mem. Hosp.*, 205 AD2d 520, 520-521, *lv denied* 85 NY2d 801).

Nor can it properly be said that plaintiff failed to raise the issue of the need for an adverse inference. Inasmuch as his complaint was dismissed at the close of his case, he never had the opportunity to formally request an adverse inference charge. In any case, when arguing in opposition to defendant's motion to dismiss, plaintiff argued that he was entitled to a rebuttable presumption that the City was responsible for the construction of the ramp. This contention is enough to put the question before this Court.

It bears emphasis that an inference such as I would apply here is viable only in "cause-or-create" cases, where the plaintiff offered evidence establishing a defect in the design or construction of the pavement, rather than due to some natural event or deliberate act subsequent to the actual paving, such as cracks or damage to the paving. Under the latter type of circumstances, the injured party would still be bound by general notice requirements, as well as the prior written notice rule (Administrative Code of City of NY § 7-201 [c] [2]).

It is clear from the foregoing that in dismissing the complaint at the close of the plaintiff's case, the court erred by prematurely disposing of the matter. We should be mindful of circumstances in which a Judge has heeded the temptation to dismiss a case based upon a personal assessment of the facts, when a jury might easily and properly have come to the opposite conclusion. In such circumstances, like the present case, we should correct the error and right the wrong.