[788 NYS2d 342]

Estelle Gilson et al., Respondents, v Metropolitan Opera, Appellant, et al., Defendants.

First Department, January 11, 2005

## APPEARANCES OF COUNSEL

*McCabe, Collins, McGeough & Fowler, LLP*, Mineola (*Patrick M. Murphy* of counsel), for appellant.

*Law Offices of John C. Dearie & Associates*, New York City (*Timothy F.X. Jones* of counsel), for respondents.

## OPINION OF THE COURT

SAXE, J.P.

When a disabled opera patron, experiencing physical difficulty in maneuvering into his seat in the darkened opera house, falls into another patron, knocking her down and causing her injuries, regardless of how unfortunate the accident and its consequences may be, the injured audience member does not have a viable negligence claim against the opera house, in the absence of some breach of duty not present here. The claim that the house staff was negligent in permitting the patron to take his seat without an escort, or after the house lights went down, cannot stand insofar as the opera house has no duty to provide such an escort. Although the Metropolitan Opera has enacted a house rule that prohibits audience members from being seated after the house lights have gone down, this rule cannot breathe life into plaintiff's claim by creating a duty, regardless of whether we view the rule as one of etiquette or one of safety.

The asserted facts are these: On December 3, 2001, plaintiff Estelle Gilson and a friend attended a performance at the Metropolitan Opera House at Lincoln Center. Mrs. Gilson was seated in an aisle seat in the dress circle, row E. A couple, defendant Taitt and his wife, was seated inside the row, past Mrs. Gilson's seat.

During an approximately 20-minute intermission, all the individuals involved left their seats. Plaintiff and her friend returned to their seats when the signal bells sounded, and thereafter the house lights went down in preparation for the second act. However, the Taitts did not return to their seats until after the music for the second act had already begun, which, according to plaintiff's estimation, was about 10 minutes into the second act.

The Taitts returned in the darkened auditorium, without any escort or assistance by ushers. Plaintiff got out of her seat and

stepped into the aisle and down a step in order to give them room to pass, and Mrs. Taitt tried to assist her husband toward his seat. Mr. Taitt, who seemed to Mrs. Gilson to be rigid, unsteady, and unable to move his arms, lost his balance and fell into plaintiff, who fell down the stairs, striking various portions of her body on the balustrade or the wall at the bottom of the stairs.

Plaintiffs' complaint as against defendant Lincoln Center was dismissed as a claim against an out-of-possession lessor without a right of re-entry. However, the IAS court denied summary judgment on the claim against the Metropolitan Opera, reasoning that there were questions of fact "including, but not limited to whether defendant maintained the stair aisles in a dangerous manner thereby causing a dangerous condition which caused the plaintiff's accident." We reverse, concluding that accepting the facts as alleged and all possible inference that may be made in plaintiffs' favor, there is no basis for a viable claim of negligence.

In essence, the claims brought by Mrs. Gilson and her husband against the Metropolitan Opera are primarily that its staff members were negligent in allowing Mr. Taitt to return to his seat after the performance had resumed, without an escort or a flashlight to light his way, when the aisle lighting was too dim. This claim is supported by a portion of the Metropolitan Opera's "Performance Staff Rules and Guidelines" indicating that patrons will not be seated once the performance begins. Plaintiffs also rely upon an affidavit by a licensed engineer, who asserts that he visited the opera house some two years after the accident, at which time he measured the amount of light on the aisle stairway and found it to be less than two footcandles, in violation of the New York City Building Code; he further asserts that at that visit, he found that the yellow edges of the steps were not visible when the house lights were down. He alleges that the conditions he found violated Building Code (Administrative Code of City of NY) §§ 27-127, 27-128, 27-381, 27-540 and 27-541.

The dissent emphasizes that issues of fact exist as to whether house staff at the Metropolitan Opera were aware that this apparently infirm patron was returning to his seat after the hall had been darkened and the performance had begun. However, issues of fact only preclude summary judgment when they are material to deciding the matter. Even though we cannot make a finding of fact at this juncture as to whether house staff at the

Metropolitan Opera permitted Mr. Taitt and his wife to enter the auditorium and return to his seat unattended by an usher after the performance had begun, the resolution of this point is irrelevant for purposes of this negligence claim against the Metropolitan Opera. The factual assertions, taken together, with all possible inferences in plaintiffs' favor, do not present a basis for a proper finding of negligence against the opera house.

The assertion that an infirm individual, escorted by a spouse or companion, was not shown to his seat by an usher, does not state a breach of any common-law duty owed to its patrons by the opera house, in the absence of some specially created duty not present here. That the house lights were down at the time does not create any such duty. Nor does the existence of a "house rule" precluding patrons from being seated after the theater is darkened.

Initially, Metropolitan Opera's "Performance Staff Rules and Guidelines" cannot be relied upon to establish the standard of conduct by which defendant's staff must be judged. The provision directing staff not to admit audience members once the house lights have gone down and the performance has begun is simply a guideline promulgated by the organization for the benefit of performers and the seated members of the audience, to protect them from being disturbed during the performance. While one portion of the pamphlet refers to the safety of patrons, it merely states,

> "For reasons of safety *and* because no one is seated once the performance begins, every effort should be made to see that ticket holders do not cluster inside the entrance to the Auditorium prior to or during the performance. All ticket holders should be seated quietly and efficiently, especially when the house lights are down or during a late seating." (Emphasis added.)

A rational reading of this provision discloses that the reference to safety is not the motivation for refusing to seat patrons during a performance; rather, both safety concerns and the no-seating policy are, jointly, the motives for the direction that "every effort should be made to see that ticket holders do not cluster inside the entrance to the Auditorium prior to or during the performance."

Moreover, even if the no-seating policy had been adopted in order to protect the audience members' safety rather than as a rule of etiquette, the policy would still amount to an internal

rule imposing "a standard that transcends reasonable care," the breach of which cannot be considered evidence of negligence (*see Sherman v Robinson,* 80 NY2d 483, 489 n 3 [1992]), at least where there is no showing of detrimental reliance by the plaintiff on the rule (*see Prince v New York City Hous. Auth.,* 302 AD2d 285, 286 [2003], citing *Clarke v New York City Tr. Auth.,* 174 AD2d 268, 275-276 [1992]).

Were we to now impose on the Metropolitan Opera a duty to escort into his or her seat any audience member not seated once the house lights were down, based upon the relied-upon guideline, we would, in effect, be punishing it for attempting to ensure an exceptional level of courtesy to the audience and the performers. Such a ruling could also lead to a new and heightened standard of care for all theatrical venues in which audience members sometimes take their seats after the house lights are turned down, such as movie theaters, concert halls and other arenas.

Nor is plaintiffs' negligence claim against the Metropolitan Opera saved by the expert's assertions claiming insufficient lighting in violation of New York City Building Code (Administrative Code of City of NY) § 27-381 (a), and other violations. Initially, section 27-381 (a), relied on by plaintiffs' expert to assert that the lighting should have measured a minimum of two footcandles, applies to corridors and exits; section 27-532 (a) (9), applicable to aisles, require only one-half footcandle of lighting. However, even assuming that the applicable illumination requirement is the two footcandles in section 27-381 (a), plaintiffs' expert's measurement of light output performed almost two years after the accident is not probative of whether the measure of light output was the same at the time of the accident (*see McGarvey v Bank of N.Y.,* 7 AD3d 431 [2004]; *Kruimer v National Cleaning Contrs.,* 256 AD2d 1 [1998]; *Papazian v New York City Tr. Auth.,* 293 AD2d 658 [2002]). Furthermore, the expert's affidavit does not even indicate that he was measuring the light output in the particular aisle where the accident occurred, rendering his findings even more irrelevant (*see Murphy v Conner,* 84 NY2d 969, 972 [1994]). Review of the remainder of the Code provisions he cited reflects no connection between any of them and the conditions in the opera house.

In addition to all these failings, nothing in plaintiffs' submissions explains how the claimed malfeasance or nonfeasance of the Metropolitan Opera led to Mr. Taitt's loss of balance and fall, which do not appear to have been related to an inability to

see his seat, but rather, to his difficulty in ambulating there. What occurred here is that one audience member, experiencing physical problems in taking his seat due to a disability, fell into another audience member. There is no basis in law to hold the owner of the venue liable for this accident.

Accordingly, the order of the Supreme Court, Bronx County (Janice L. Bowman, J.), entered on or about April 21, 2004, which, to the extent appealed from, denied defendants' motion insofar as it sought summary judgment dismissing the complaint against defendant Metropolitan Opera, should be reversed, on the law, without costs, that aspect of the motion granted, and the complaint against defendant Metropolitan Opera dismissed. The Clerk is directed to enter judgment accordingly.

SWEENY, J. (dissenting). We dissent. The order on appeal should be affirmed.

The facts set forth above present material factual issues precluding the award of summary judgment. These issues include but are not limited to whether defendant's house staff should have permitted the patron who fell upon plaintiff to enter the auditorium and return to his seat after the hall had been darkened and the performance had begun; having done so, whether an usher should have accompanied the patron; whether this constituted negligence under all the relevant circumstances, including any evident infirmity of the late-returning patron; and whether plaintiff's injury was a foreseeable consequence of any such negligence. Our colleagues in the majority have set forth many of the issues; however, they then proceeded to resolve them. For example, in arguing that defendant Metropolitan Opera is not liable as a matter of law, the majority makes specific reference to the inapplicability of the Performance Staff Rules and Guidelines (Guidelines) and the inadequacy of the evidence on the alleged violations of the City Building Code. The substance of each is described by the majority and need not be repeated here.

At the outset, it is noted that notwithstanding that a specific purpose of the Guidelines was to assure the safety of patrons, neither the IAS Justice nor do we specifically rely on either the Guidelines or the alleged Code violations in determining that there are unresolved questions of fact. In any event, whether the Guidelines will be offered, albeit with a limiting instruction (*see Clarke v New York City Tr. Auth.,* 174 AD2d 268, 276 [1992]), and what weight the alleged Code violations and the plaintiffs' expert report will be afforded, are not questions that can be resolved at this point.

Similarly, the conclusion by the majority that there is no obligation for an usher to escort a patron to his seat (without even addressing whether the usher should have initially placed himself/herself in that position) places undue emphasis on just one point a jury may consider in determining negligence and proximate cause. Under the unique facts of this case, whether an usher *should* have escorted the patron, once the decision to let him in the theater was made, is a question of fact, not law.

The facts are that a patron who visibly had trouble walking was allowed by defendant's employees to enter a darkened theater and attempt to walk to his seat in a, at best, dimly lit, stepped area, with the resulting injury to an innocent plaintiff. This raises triable factual issues which preclude the award of summary judgment.

SULLIVAN and NARDELLI, JJ., concur with SAXE, J.P.; ELLERIN and SWEENY, JJ., dissent in a separate opinion by SWEENY, J.

Order, Supreme Court, Bronx County, entered on or about April 21, 2004, reversed, on the law, without costs, defendants' motion insofar as it sought summary judgment dismissing the complaint against defendant Metropolitan Opera granted, and the complaint against that defendant dismissed. The Clerk is directed to enter judgment accordingly.