[64 NYS3d 22]

ROBERTO HAIBI, as Administrator of the Estate of ERASMO HAIBI, Deceased, Respondent, v 790 RIVERSIDE DRIVE OWNERS, INC., Individually and Doing Business as RIVIERA COOPERATIVE, et al., Appellants.

First Department, November 16, 2017

### APPEARANCES OF COUNSEL

*Mauro Lilling Naparty, LLP*, Woodbury (*Gregory A. Cascino* and *Matthew W. Naparty* of counsel), for appellants.

*Rheingold Giuffra Ruffo & Plotkin LLP*, New York City (*Jeremy A. Hellman* and *Thomas P. Giuffra* of counsel), for respondent.

### OPINION OF THE COURT

RENWICK, J.

Plaintiff, Roberto Haibi, brings this action as the administrator of his father Erasmo Haibi's estate to recover damages for Erasmo's injuries from a fall on October 24, 2009, on a stairway in a residential apartment building owned by defendant 790 Riverside Drive Owners, Inc., and managed by defendant Orsid Realty Corp. The stairway connects the main and southern lobbies near an entrance to defendants' building. Plaintiff alleges that his father was injured by a fall on the lobby stairs because of, among other things, inadequate illumination.

Erasmo Haibi's granddaughter, Danette Rodriguez, who lived with her grandfather in the building at the time of his accident, did not observe his fall, but found him lying injured at the bottom of the lobby stairs. Erasmo Haibi died February 5, 2011, from a cause unrelated to his fall, before he was deposed in this action. The building's surveillance cameras, however, recorded his fall on a videotape that Rodriguez viewed on the day of the fall. Although Rodriguez orally requested a copy of the videotape from defendants, and plaintiff's attorney

requested in writing that they preserve the tape, defendants destroyed it. In anticipation of trial, plaintiff moved for an adverse inference instruction to the jury, at trial, due to defendants' destruction of the tape. The motion court granted plaintiff an instruction allowing the jury to infer that the videotape would have supported Rodriguez's depiction of the stairs and of Erasmo Haibi's fall, based on Rodriguez's viewing of the tape.

In response, before the trial commenced, defendants moved for summary judgment claiming that there was no dangerous condition on their stairway that caused Erasmo Haibi's fall. Initially, the motion court granted defendants' summary judgment motion to the extent of dismissing plaintiff's claims that the stairway was unsafe due to the lack of handrails, and nonuniform treads and risers on the stairs. The court denied, however, defendants' summary judgment motion seeking a dismissal of the action, upon a finding that defendants had not eliminated issues of fact as to the adequacy of the lighting on the subject stairway and proximate cause. We now affirm.

Whether or not defendants met their prima facie burden on the issue of inadequate lighting—by submitting photographs and deposition testimony demonstrating that the subject area was illuminated by overhead light fixtures at the time of the accident—we find that plaintiff raised a triable issue of fact. Specifically, plaintiff submitted an expert's nonconclusory affidavit stating that, although the applicable 1916 Building Code of the City of New York only directed buildings to provide "adequate lighting" of all stairways (see Code of Ordinances of City of NY, ch 5, art 8, § 159 [2] [1916]), upon his inspection the light levels were a fraction of what was considered adequate lighting under later building codes from 1968 and 2008.

We reject defendants' contention, adopted by the dissent, that plaintiff's expert affidavit should be disregarded because he did not specify when his inspection of the area occurred, and under what conditions. While such details would be important for a visual observation, here plaintiff's expert performed an objective measurement, as compared to the witnesses' subjective observations, of the light level, which he found to be significantly lower than what was deemed "adequate lighting" under later building codes. For this reason, defendants' related argument, that because the applicable 1916 Building Code did not define the acceptable light level, there can be no claim of inadequacy, is equally unavailing. We

perceive no reason why adequate lighting in 1916 would differ from adequate lighting in 1968 or 2008.

On the issue of proximate cause, we find that defendants failed to meet their burden. Proximate cause is almost invariably a factual issue (*see Turturro v City of New York*, 28 NY3d 469, 485 [2016]; *Kriz v Schum*, 75 NY2d 25, 33-34 [1989]; *Eiseman v State of New York*, 70 NY2d 175 [1987]; Restatement [Second] of Torts § 433B, Comment *b*). Ordinarily, it is for the trier of fact to determine the issue of proximate cause (*see Howard v Poseidon Pools*, 72 NY2d 972, 974 [1988]). However, the issue of proximate cause may be decided as a matter of law " 'where only one conclusion may be drawn from the established facts' " (*id.* at 974, quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]).

The dissent contends, however, that the issue of proximate cause must be decided as a matter of law in favor of defendants because "none of [the witnesses to the accident or who reviewed the videotape of the accident] claimed that decedent misstepped or lost his balance due to inadequate lighting." The law, however, does not apply such a stringent requirement. To be sure, a plaintiff's inability to identify the cause of a fall is fatal to an action because a finding that the defendant's negligence proximately caused a plaintiff's injuries would be based on speculation (*Siegel v City of New York*, 86 AD3d 452 [1st Dept 2011]). However, this simply requires that the evidence identifies the defect or hazard itself and provides sufficient facts and circumstances from which causation may be reasonably inferred (*Burgos v Aqueduct Realty Corp.*, 92 NY2d 544 [1998]).

The dissent cannot and does not dispute that inadequate lighting itself may constitute a dangerous condition where the inadequacy of lighting renders the appearance of premises deceptive. Such deception occurs by the illusion that two areas of the same premises are on the same level whereas, in fact, there is a change in floor level to which the available lighting does not call sufficient attention.

In addition, we find that the evidence adduced by defendants failed to eliminate all issues of fact as to whether this alleged dangerous condition on the subject stairway contributed to the decedent's fall. In this regard, the building's residential manager, Jose Aramis Fornier (Aramis), testified that he viewed the videotape of the accident and that it showed that the decedent fell while walking up the set of stairs connecting

the upper and lower lobby on the ground floor of the building. Specifically, Aramis described what he observed in the videotape as follows:

"Q. When did you first watch the video after the incident?

"A. The day after the incident.

"Q. What did the video depict?

"A. Depict my tenant carrying something in his hand, takes a step up a stair, attempts to bring the other step, lose his balance and falls off."

Likewise, the decedent's granddaughter, Danette Rodriguez, testified that she viewed the videotape of the accident and it showed that the decedent fell while walking up the set of stairs connecting the upper and lower lobby on the ground floor of the building. From what Rodriguez could observe in the videotape, she estimated that the decedent was on one of the middle steps, "not on the very bottom level but not on the very top." Rodriguez described the decedent's fall as follows:

"Q. And he was walking toward the right side of the steps?

"A. Right.

"Q. And then what did you see?

"A. I saw him reach up to grab the column there and he missed it or—yeah, he missed it or he lost grip or something and he fell like towards the left side. Like he hit himself on the left side (indicating). It was very quick, the video. I saw it once, but what I think I recall is that his head hit the marble seat there, but that's what I recall. Like I said, I saw the video very quick, but I know he landed on this left side of his head (indicating)."

Defendants also presented the deposition testimony of the decedent's son, Roberto Haibi, who did not view the videotape of the incident but talked to his father about the fall, at the hospital. According to Roberto Haibi, his father told him that "he was going up the stairs and that he slipped and fell backwards." Although his father was not precise as to which one of the steps he was on before the fall, he did tell his son that he "was on his way up the steps" when he fell.

We find that such evidence, when viewed in a light most favorable to plaintiff, as the opponent of summary judgment (*Johnson v Goldberger*, 286 AD2d 604 [1st Dept 2001]), creates questions of fact as to whether the alleged inadequate lighting on the subject stairway was a proximate cause of the decedent's fall. Unlike the dissent's rigid analysis of proximate cause, we take into account that "[c]ircumstantial evidence or common knowledge may provide a basis from which the causal sequence may be inferred" (Prosser, Torts § 41 at 246 [3d ed]). "If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists" (*Vitanza v Growth Realties*, 91 AD2d 917, 917 [1st Dept 1983] [internal quotation marks omitted]). In this case, the dangerous condition of the stairway and the decedent's fall thereon establish the natural and reasonable inference of the proximate cause that the dissent denies.

Still, the dissent points to the deposition testimony from an eyewitness to the accident, who, unlike the decedent's relatives and defendants' employee, attributes the decedent's fall to his own negligence. Specifically, the decedent's neighbor testified that the decedent was walking down the stairs too fast, staring straight ahead and shuffling his feet. However, given the conflicting deposition testimony submitted in support of defendants' motion as to how the subject accident occurred, defendants failed to establish their prima facie entitlement to judgment as a matter of law, since that testimony raised triable issues of fact and credibility as to whether defendants are at fault in the happening of the accident.

Finally, unlike the dissent, we find it significant in this case that the court has granted a permissive adverse inference charge to plaintiff for defendants' destruction of the video that recorded the decedent's fall. We reject the dissent's suggestion that the spoliation was inadvertent because it took place when the "video that recorded decedent's fall was automatically taped over by defendants 30 days after the incident." The dissent ignores the fact that defendants' employees failed to comply with the decedent's granddaughter's request for a copy of the video after viewing it the same day of the accident. Nor do we find persuasive the dissent's conclusion that such adverse inference has no relevance on the issue of proximate cause. Again, the dissent ignores the fact that the unavailability of the

videotape *to* plaintiff may have impaired his ability *to* establish that the alleged defective condition contributed to the decedent's fall by preventing the jury from making a proper assessment of the context of the videotape.

Of course, the grant of an adverse inference charge alone may not be sufficient to withstand a motion for summary judgment. Nevertheless, here it is an appropriate consideration, along with the other evidence adduced by defendants, as to whether the issue of proximate cause is one for the jury. It bears repeating that the issue of proximate cause may be decided "as a matter of law where only one conclusion may be drawn from the established facts;" but "where [as here] there is any doubt, confusion, or difficulty in deciding whether the issue ought to be decided as a matter of law, the better course is to leave the point for the jury to decide" (*White v Diaz*, 49 AD3d 134, 139 [1st Dept 2008] [internal quotation marks and citation omitted]; *see Dillard v New York City Hous. Auth.*, 112 AD3d 504 [1st Dept 2013]).

We have considered defendants' remaining arguments and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Lucy Billings, J.), entered February 22, 2017, which, insofar as appealed from as limited by the briefs, denied defendants' motion for summary judgment dismissing so much of the complaint as alleged inadequate lighting of the premises, and granted plaintiff's cross motion to amend the bill of particulars to the extent of including the applicable 1916 Building Code provision regarding adequate lighting, affirmed, without costs.

ANDRIAS, J. (dissenting). On October 24, 2009, Erasmo Haibi (decedent), age 87, fell while traversing a three-step stairway that connected the lower lobby to the upper lobby in an apartment building owned and managed by defendants. On February 5, 2011, decedent died from unrelated causes before he could be deposed. A surveillance video that recorded decedent's fall was automatically taped over by defendants 30 days after the incident. Based on plaintiff's counsel's assertion that a copy of the videotape had been requested during the 30-day period, the court, on a previous motion, granted plaintiff's request for a permissive adverse inference charge which would allow the jury to infer that "the videotape would have supported plaintiff's depiction of [decedent's] fall and the stairs' condition when [decedent] fell."

In the order under review, Supreme Court granted defendants' motion for summary judgment in part, "dismissing plaintiff's claims that the lack of handrails and of uniform treads and risers on defendants' stairs where [decedent] fell caused his fall." However, based on decedent's granddaughter's testimony that the lighting in the lobby was "dim," the court denied defendants' motion with regard to plaintiff's claim that "the stairs' inadequate lighting caused the fall" and granted plaintiff's cross motion to supplement his bill of particulars to the extent of including the applicable 1916 Building Code provision regarding lighting.

Defendants appeal from the order insofar as it denied their motion for summary judgment in part and granted plaintiff's cross motion in part. The majority affirms, finding that plaintiff raised a triable issue of fact as to the adequacy of the lobby lighting and defendants failed to sustain their prima facie burden of establishing that inadequate lighting was not a proximate cause of decedent's fall. Because I believe that defendants established their prima facie entitlement to summary judgment with regard to both the adequacy of the lighting and the absence of proximate cause, and that plaintiff's submissions, even when enhanced by an adverse inference, did not raise a material issue of fact, I dissent.

Defendants established prima facie that there was adequate natural and artificial lighting in the area of the steps through photographs and the testimony of four witnesses (*see Pwangsunthie v Marco Realty Assoc., L.P.*, 136 AD3d 502 [1st Dept 2016], *lv denied* 27 NY3d 906 [2016]; *Franchini v American Legion Post*, 107 AD3d 432 [1st Dept 2013]).

The photographs, including one decedent's granddaughter took a few days after the incident, showed the open and obvious condition of the stairway and the overhead lighting illuminating the area. The granddaughter, who lived in the building, testified that everything in the photograph looked like it did on the date of decedent's accident, and that there was a light in the ceiling in the center of the upper level of the lobby that was "always on" and a light on top of the lower level of the lobby that was illuminated on the date of the accident. She also testified that she had never complained about the lighting in the area and had no personal knowledge of anyone else ever complaining.

When asked if there was light in the area when he saw decedent fall, the only eyewitness to the incident responded,

152

"Yes, there is a double [floor to ceiling] window right between the staircase" that lets in "a lot of light." He also testified that there was a ceiling light at the top of the steps, a hall lamp, and a "huge opening . . . on the Riverside Drive that light floods through to the mezzanine."

Plaintiff testified that the last time he saw his father before the accident the lobby was "lit up" in the daytime and that the lighting was also "fine" at night. The building's resident manager testified that he never received any complaints about the stairway, and that there were no accidents on the steps at any time prior to decedent's accident.

The majority states that whether or not defendants met their prima facie burden on the issue of inadequate lighting, plaintiff raised an issue of fact through the affidavit of an expert who stated that although the applicable 1916 Building Code only directed buildings to provide "adequate" lighting, upon his inspection, the light levels were a fraction of what was considered adequate lighting under later building codes from 1968 and 2008. However, plaintiff's expert did not identify any specific code sections and his affidavit did not suffice to establish that the lighting was not "adequate" under the 1916 Building Code, which does not define the acceptable light level, and was otherwise deficient.

The accident occurred at 4:30 p.m. on October 24, 2009, at which time, as evidenced by the deposition testimony, the area was illuminated by both natural and artificial light. Plaintiff's expert inspected the premises more than a year later, at the end of November, at which time it becomes darker earlier in the day due, in part, to the end of daylight saving time. The expert did not specify what time of day his inspection occurred, what the weather was like outside, or what lights were on, all of which would have affected the illumination levels in the lobby at the time of his inspection. While the expert did state that "[it] was indicated to me that during the site inspection, the illumination levels at the stairway was essentially the same as the lighting condition when [decedent] suffered his injuries," he did not identify who made this representation, the source of their information, what the subjective term "essentially the same" meant to them, or whether he measured just the artificial lighting or both the artificial and natural lighting. Given these deficiencies, plaintiff's expert's measurement of light output performed more than a year after the accident is not probative of whether the measure of light output

was the same at the time of the accident (*see Gilson v Metropolitan Opera*, 15 AD3d 55, 59 [1st Dept 2005], *affd* 5 NY3d 574 [2005]; *Santiago v United Artists Communications*, 263 AD2d 407, 408 [1st Dept 1999]).

The majority states that these details are unimportant because the expert performed an "objective" measurement of light levels "as compared to the witnesses' subjective observations." However, without knowing the time of day and conditions at the time of plaintiff's expert's inspection, and how they compared to the conditions at the time of the accident, it is impossible to determine whether the same amount of natural light was flooding into the lobby. Similarly, without the expert stating which lights were on at the time of his inspection, it cannot be determined if the same amount of artificial light existed.

In any event, contrary to the view of the majority, defendant demonstrated prima facie the absence of proximate cause through deposition testimony. Decedent's granddaughter testified that the surveillance video showed that decedent was walking towards the right side of the staircase when he "reach[ed] up to grab the column there and he missed it . . . or he lost grip or something and he fell like towards the left side." The building's resident manager testified that the surveillance video showed decedent "carrying something in his hand [mail], takes a step up a stair, attempts to bring the other step, lose[s] his balance and falls off." Plaintiff testified that decedent told him that "he was going up the stairs and he slipped and fell backwards." The eyewitness testified that when decedent walked he "shuffled"; "[h]e didn't pick his heels up, he just slid across the floor." On the date of the accident, the eyewitness was coming down the stairs and saw decedent "staring straight ahead and shuffling his feet, but he was going kind of fast—, not fast, fast, but fast." The eyewitness told decedent to slow down, but he "shuffled right off the top step." The eyewitness also testified that the building's resident manager told him that decedent's granddaughter asked to see the surveillance tape after her grandfather told her that the witness had pushed him, which the witness denied. While these descriptions of the accident may differ, the salient fact is that none of these witnesses claimed that decedent misstepped or lost his balance due to inadequate lighting or that the stairs were inherently dangerous or constituted a trap (*see Lumpkin v 3171 Rochambeau Ave, LLC*, 148 AD3d 511, 512 [1st Dept 2017]; *Richards v Kahn's Realty Corp.*, 114 AD3d 475 [1st Dept 2014]).

The majority finds that the evidence adduced by defendants failed to eliminate all issues of fact with respect to whether the inadequacy of the lighting rendered the appearance of the steps deceptive. However, optical confusion occurs when conditions in an area create the illusion of a flat surface that visually obscures any steps (*see Langer v 116 Lexington Ave., Inc.*, 92 AD3d 597, 599 [1st Dept 2012], *lv denied* 24 NY3d 907 [2014]). Here, defendants sustained their prima facie burden through the photographs of the stairway showing an open and obvious drop in elevation and the deposition testimony which did not attribute decedent's fall to the inability to detect the elevation differential between upper and lower lobby (*see Remes v 513 W. 26th Realty, LLC*, 73 AD3d 665, 666 [1st Dept 2010] ["In light of the photographs, which show an obvious drop in elevation and trimmings against the wall outlining the steps, and the deposition testimony that no prior similar incidents had occurred and that bright lights illuminated the stairway area, Owner made a prima facie showing that the stairway area did not constitute a hazardous condition or hidden trap proximately causing plaintiff's injuries"]; *Broodie v Gibco Enters., Ltd.*, 67 AD3d 418, 418 [1st Dept 2009] ["several color photographs in the record depicted the step as not particularly high, and clearly painted in white and black so as to be visible even in the low light provided by the recessed ceiling bulb above"]; *Burke v Canyon Rd. Rest.*, 60 AD3d 558, 559 [1st Dept 2009] [the defendants granted summary judgment because deposition testimony established that the area of the step was illuminated, and the general manager of the restaurant for the last several years was not aware of any complaints or accidents]).

In opposition to defendants' prima facie showing, plaintiff failed to raise a triable issue of fact as to proximate cause. "Even if an expert alludes to potential defects on a stairway, the plaintiff still must establish that the slip and fall was connected to the supposed defect, absent which summary judgment is appropriate" (*see Kane v Estia Greek Rest.*, 4 AD3d 189, 190 [1st Dept 2004]). Furthermore, "[w]here the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . the opinion should be given no probative force and is insufficient to withstand summary judgment" (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]). Here, plaintiff's expert did not state that he reviewed any of the deposition testimony describing how the accident occurred

and his conclusory opinion "that the poor lighting and the configuration of the stairway caused [decedent] to stumble and lose his footing," rather than a misstep or loss of balance, is based on sheer speculation (*see Humphrey v Merivil*, 109 AD3d 792 [2d Dept 2013]; *Costantino v Webel*, 57 AD3d 472, 472-473 [2d Dept 2008]; *Lissauer v Shaarei Halacha, Inc.*, 37 AD3d 427, 428 [2d Dept 2007]).

The granddaughter's testimony that the lighting was "dim" does not establish the existence of material issues of fact (*see Branham v Loews Orpheum Cinemas, Inc.*, 31 AD3d 319, 325 [1st Dept 2006], *affd* 8 NY3d 931 [2007]). When asked if she ever felt like she "could not see adequately in the lobby because of the lighting," the granddaughter replied, "I've never complained, but it is a dim light, you know." However, she never addressed the natural light in the area. Nor can a reasonable inference of defendants' negligence be drawn from her testimony that when she watched the videotape she saw decedent "reach up to grab the column . . . [and] he missed it . . . or he lost [his] grip or something." Even if decedent missed the column, rather than losing his grip, the granddaughter did not testify that decedent did not perceive the step or column due to poor lighting (*see Fishelson v Kramer Props., LLC*, 133 AD3d 706 [2d Dept 2015]; *Knickerbocker v Ulster Performing Arts Ctr.*, 74 AD3d 1526 [3d Dept 2010]).

In holding otherwise, the majority places great weight on the fact that the court had previously granted plaintiff's request for an adverse inference charge due to defendants' destruction of the videotape. However, the granting of plaintiff's motion for an adverse inference charge did not preclude defendants from offering evidence that the stairway was safe or that it did not cause decedent to fall, including the testimony of the resident manager and decedent's granddaughter as to what they saw on the videotape. Moreover, an adverse inference does not shift the burden of proof of plaintiff, the nonmoving party on summary judgment, to make a sufficient showing on an essential element of his case (*see Baez v City of New York*, 278 AD2d 83, 83-84 [1st Dept 2000]). Rather, the charge would only allow the jury to infer that the videotape would have supported plaintiff's depiction of decedent's fall and the condition of the stairs.

Here, in describing the accident, plaintiff's counsel stated that

> "[a]s [decedent] ascended a stairway in the main lobby, he lost his footing on the treading. He at-

tempted to avoid falling and to regain his footing by grasping the post of the railing. There was no handrail to provide a secure handhold. As a result of the lack of hand rail at the location, [decedent] was unable to regain to his footing and fell down the stairs, down into the lobby."

Counsel did not point to any testimony connecting inadequate lighting to this description. Nor did he, or any of plaintiff's witnesses, assert that the accident was the result of optical confusion. Moreover, in granting defendant summary judgment in part, the court found that the steps were not inherently dangerous. Specifically, the court found that defendants established "that the stairs' lack of a handrail and their nonuniform treads and risers did not pose an unlawful condition that defendants were required to correct, to which plaintiff has offered no contrary evidence," and plaintiff "does not claim that the stairs' lack of a handrail and their non-uniform treads and risers, despite their compliance with code requirements, still posed a dangerous condition because of their design or configuration." Plaintiff has not appealed these determinations. Thus, there is no basis, other than speculation, to conclude that optical confusion contributed to plaintiff's accident.

Accordingly, I would grant defendants' motion for summary judgment dismissing so much of the complaint as alleged inadequate lighting of the premises, and deny plaintiff's cross motion to amend the bill of particulars to the extent of including the applicable 1916 Building Code provision regarding adequate lighting.

Tom, J.P., Singh and Moulton, JJ., concur with Renwick, J.; Andrias, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered February 22, 2017, affirmed, without costs.