■ Mayra Duluc, Appellant, v AC & L Food Corp. et al., Respondents. [990 NYS2d 24]—

Order, Supreme Court, Bronx County (Wilma Guzman, J.), entered March 29, 2013, which, in this slip-and-fall action, granted defendants' motion for summary judgment dismissing the complaint, and denied plaintiff's cross motion to strike the answer or for other sanctions for spoliation of surveillance tapes, affirmed, without costs.

One week after plaintiff's August 8, 2009 slip-and-fall accident on defendant's premises, plaintiff's counsel sent a notice to defendant "to preserve any and all video recordings/surveillance tapes/still photos of any nature that depict the subject slip and fall accident" on the date and time in question. This notice was received by Nilka Bermudez, defendant's employee in charge of these recordings. After reviewing the tapes from all of the cameras, Bermudez preserved an 84-second portion of tape from one camera that depicted plaintiff's accident, starting from one minute preceding her fall. She downloaded this clip onto a CD-ROM and forwarded a copy to defendant's insurance carrier.

Bermudez testified that in August 2009, defendant's standard procedure regarding surveillance tapes was to send a copy of video footage of any accident to its insurance carrier, and that,

after a search of all cameras, the 84-second portion of the one camera tape was found to be the only footage depicting the accident. She further stated that the insurance carrier never told her what to send it regarding an accident and never asked her to send anything more than the short clip of the accident. Additionally, she testified that the computer system in use at that time automatically erased all footage every 21 days due to limited storage capacity. She also stated that the system later broke and was replaced. However, she could not remember when the replacement occurred, and stated that the old system had been discarded.

Six weeks after the first request, counsel expanded his demand to six hours of footage leading up to the accident, for all 32 cameras in the store.

After discovery was completed, defendants moved for summary judgment, arguing that they did not create or have actual notice of the condition that allegedly caused plaintiff to fall. Plaintiff opposed the motion and cross-moved to strike defendants' answer for withholding and destroying relevant video footage, or, in the alternative, for an order directing that the issue of notice be resolved against defendants.

The motion court found that defendants met their prima facie burden to establish that they did not create or have actual notice of the condition upon which plaintiff allegedly fell and that plaintiff failed to raise a triable issue of fact as to constructive notice. Although not required to do so in light of its ruling on the summary judgment motion, the court addressed plaintiff's cross motion to strike defendants' answer for spoliation of evidence. The court found that the destruction of the original surveillance video was not willful or contumacious or in violation of a court order. The court accepted Bermudez's explanation regarding the loss of the tape, finding no reason to attribute bad faith to defendants. It also rejected plaintiff's contention that defendants should have preserved six hours of footage from all 32 store cameras.

On a motion for spoliation sanctions, the moving party must establish that (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a "culpable state of mind," which may include ordinary negligence; and (3) the destroyed evidence was relevant to the moving party's claim or defense (*see VOOM HD Holdings LLC v EchoStar Satellite L.L.C.*, 93 AD3d 33, 45 [1st Dept 2012] [internal quotation marks omitted]; *Ahroner v Israel Discount Bank of N.Y.*, 79 AD3d 481 [1st Dept 2010]). In deciding whether to impose sanctions, courts look to the extent

that the spoliation of evidence may prejudice a party, and whether a particular sanction is necessary as a matter of elementary fairness (*see Standard Fire Ins. Co. v Federal Pac. Elec. Co.*, 14 AD3d 213, 218 [1st Dept 2004]). The burden is on the party requesting sanctions to make the requisite showing (*see Mohammed v Command Sec. Corp.*, 83 AD3d 605 [1st Dept 2011], *lv denied* 17 NY3d 708 [2011]).

The motion court properly exercised its discretion in denying plaintiff's motion for spoliation sanctions. Plaintiff's initial demand for preservation of videotapes was limited to those that "depict the subject slip and fall accident that took place on the above referenced date, time and location." The portion of the tape that was preserved complied with this demand.

We take no issue with the dissent's contention that a property owner's receipt of a notice to preserve records triggers certain obligations. The extent of the obligation is where we part company with our colleague.

While it is true that a plaintiff is entitled to inspect tapes to determine whether the area of an accident is depicted and "should not be compelled to accept defendant's self-serving statement concerning the contents of the destroyed tapes" (*Gogos v Modell's Sporting Goods, Inc.*, 87 AD3d 248, 251 [1st Dept 2011]), this principle does not translate into an obligation on a defendant to preserve hours of tapes indefinitely each time an incident occurs on its premises in anticipation of a plaintiff's request for them. That obligation would impose an unreasonable burden on property owners and lessees.

What is significant here is that plaintiff's counsel's letter to Bermudez is dated August 14, 2009, approximately six days after the accident. The record discloses a letter from defendant's insurance carrier to plaintiff's counsel dated one week later, August 21, acknowledging the claim and requesting further information. In response, on August 27, plaintiff's counsel provided the carrier with some of the requested information and enclosed the August 14 letter demanding preservation of the videotape, reiterating its demand for production of same. There is no indication that, at this point, which was still within the 21-day window before the tapes were overwritten, counsel sought anything beyond what he originally asked for. It was only in a motion to strike defendant's answer or compel production of discovery, returnable on September 25, that plaintiff asked for the first time for six hours of video preceding the slip and fall. By that point, the tapes either had been reused in the normal course of business and were no longer available, or had been discarded after the system broke down.

The procedures employed by defendants with respect to preserving the tapes and coordinating with the insurance carriers were less than stellar. Nevertheless, they did not rise to the level of sanctionable conduct, and an otherwise sufficient motion to dismiss should not be denied on the basis of sheer speculation that camera tapes from another angle might have revealed a cause for plaintiff's fall.

Nor can plaintiff accomplish by indirection what she failed to do directly in her response to defendant's motion for summary judgment. The court correctly found that plaintiff did not raise a triable issue of fact with respect to defendant's creation or notice of the alleged dangerous condition. The testimony of defendant's employees regarding the practice and procedure of cleaning the store, as well as plaintiff's own testimony that she did not observe the condition of the floor before her fall supports the court's conclusion.

Plaintiff argues that the "sweeping" motion of an employee's foot over the floor in the area where plaintiff fell immediately after the fall, as shown on the portion of the tape that was preserved, demonstrates that something was on the floor, and the employee pushed it aside. She further argues that, had all the tapes been preserved, this fact would clearly have been demonstrated. However, this argument rests on mere speculation, since the testimony of that employee was unequivocal that she ran her foot over the floor in a sweeping motion after the accident to see if it was wet, and did not observe anything wet or slippery. To argue that the unpreserved tapes might potentially have shown a condition that caused plaintiff's fall does not meet plaintiff's burden to show that defendant improperly destroyed the tape (*see Robertson v New York City Hous. Auth.*, 58 AD3d 535, 536-537 [1st Dept 2009]).

The precedents cited by our dissenting colleague do not require a different result. In those cases, specific items were requested for specific electronic or video recordings of a specific area or regarding a specific incident. Nothing was preserved by those defendants despite being put on notice that this material would be relevant to either potential or pending litigation. That is not the situation here. Counsel requested preservation of videotape recordings "that depict the subject slip and fall accident." That recording was preserved. While it may have been a better practice to preserve any footage of the area from any camera for a period before and after the accident, that was not the request made to defendants, and it would unfair to defendant to penalize it for not anticipating plaintiff's additional requests. Concur—Tom, J.P., Friedman, Sweeny and Freedman, JJ.

Saxe, J., dissents in a memorandum as follows: I would deny summary judgment and grant plaintiff's cross motion for spoliation sanctions to the extent of directing that an adverse inference charge be given at trial with regard to the destroyed surveillance tapes.

Plaintiff slipped and fell while shopping at defendant's supermarket on August 8, 2009, as she was approaching a cashier's station to pay for some tomatoes. Plaintiff's attorneys sent a notice to defendant just one week after her accident, directing defendant "to preserve any and all video recordings/surveillance tapes/still photos of any nature that depict the subject slip and fall accident that took place on the above referenced date, time and location[,] [and] not to reuse, erase and/or destroy the aforesaid video recordings/surveillance tapes/still photos." The notice was received by Nilka Bermudez, the employee in charge of those recordings, who, according to her deposition testimony, reviewed all the recordings made by the store's 32 surveillance cameras that morning. Bermudez did not forward the notice to the store's insurer or attorney, and she preserved only an 84-second recording that, in its last 24 seconds, showed plaintiff, from the back, approaching the cash registers and turning into one cashier's lane, only to immediately slip and fall. The angle of the recording does not show the portion of the floor on which plaintiff slipped.

Except for that 84-second clip, the remainder of the surveillance camera recordings from that day were either recorded over after three weeks or discarded when the system broke down and was replaced.

When defendant moved for summary judgment dismissing the complaint, plaintiff cross-moved to strike defendant's answer, contending that the destruction of the video recordings other than the saved 84 seconds constituted spoliation of relevant evidence. The motion court rejected plaintiff's contention, finding that defendant's conduct as to the surveillance footage was not wilful or contumacious or contrary to a court order, and accordingly was not spoliation. I disagree.

New York's common-law doctrine of spoliation authorizes the imposition of sanctions even when the failure to prevent the automatic overwriting of recordings was negligent rather than willful, as long as the alleged spoliator was on notice that those recordings would be relevant to anticipated litigation (*see Strong v City of New York*, 112 AD3d 15, 22 [2013]). In *Strong*, the plaintiff demonstrated that the City had negligently failed to take active steps to halt the process of automatically deleting audio recordings, despite having notice of impending litigation

for which a specific audio recording would be relevant (*id.*). Similarly, in *Suazo v Linden Plaza Assoc., L.P.* (102 AD3d 570 [1st Dept 2013]), spoliation was found based on the defendant's failure to preserve surveillance video for anticipated litigation despite notice that litigation would probably ensue. And, in *Gogos v Modell's Sporting Goods, Inc.* (87 AD3d 248 [1st Dept 2011]), an adverse inference charge was directed where the defendant destroyed store surveillance tapes despite having been put on notice to preserve and produce them.

While severe sanctions such as striking pleadings or an order of preclusion may be excessive where the spoliation was merely negligent, other, less severe sanctions such as an adverse inference charge may nevertheless be appropriate. The charge allows, but does not require the jury to infer that relevant evidence against the spoliator's interest was present on the erased recording, if the explanation for its destruction is not reasonable (*see Gogos*, 87 AD3d at 255; PJI 1:77.1).

Defendant suggests that based on the phrasing of plaintiff's notice, it was reasonable for it to limit its retrieval and retention to only that portion of the footage that actually showed plaintiff falling. However, defendant's obligation upon receipt of plaintiff's notice was not so narrow.

This Court held in *Gogos* that "[p]laintiffs were entitled to inspect the tapes to determine for themselves whether the area of the accident was depicted. They should not be compelled to accept defendant's self-serving statement concerning the contents of the destroyed tapes" (87 AD3d at 251). This reasonable rule is equally applicable here.

The rule in *Gogos* does not require property owners to "preserve hours of tapes indefinitely each time an incident occurs on its premises in anticipation of a plaintiff's request for them," as the majority protests. It does, however, impose a reasonable preservation obligation. After a person is injured an accident, service of a notice to preserve recordings of that day's events imposes on the property owner an important obligation, and should be handled carefully. People who slip and fall are often too injured or too flustered to carefully examine their surroundings or to determine whether there were eyewitnesses to their accident. The images contained on any video recordings made on that day and around that time by surveillance cameras may well be critical in assisting the injured person in establishing exactly what occurred and why. Since it is often standard procedure for these recordings to be overwritten or recorded over in a matter of weeks or a few months, timely service of a notice on the property owner to preserve any such recordings

must create an obligation on the part of that property owner to preserve all potentially relevant recordings. The property owner is not free to extract from such recordings a short clip depicting that one moment at that one location from only one angle and to assert that nothing else on its recordings is relevant—especially when the preserved portion of the recording does not even depict the condition of the floor on which the slip and fall occurred.

Nor may a defendant be permitted to avoid the obligations that arise through service of a notice to preserve by the expedient of failing to make its employee familiar with those obligations. The question is not whether defendant's employee, Nilka Bermudez, acted in good faith when she reviewed all the surveillance footage and determined that, in her estimation, only the 84-second clip she saved needed to be preserved. The question is what defendant should have done upon receipt of plaintiff's demand. If defendant, acting through its employee, failed to fulfill its legal obligations, its employee's lack of knowledge renders defendant answerable for that failure.

There was more than one failure here for which defendant is answerable. The first was Bermudez's failure to retrieve and preserve other footage, from other angles, showing the condition of the floor where plaintiff fell, and activities in that area during the time preceding the accident. The seconds of footage Bermudez retrieved for preservation did not even show the spot on the floor on which plaintiff slipped. Since Bermudez's deposition testimony acknowledged that other cameras, recording from other angles, would have captured any spilled items on the floor of the store, there would have been footage from another surveillance camera that recorded the condition of the floor before and at the time of plaintiff's fall.

The second was the failure of defendant's insurer or its attorney, who are chargeable with the knowledge that the store's legal obligation included not only the preservation of that single 84-second clip, but any recording by any of the store's surveillance cameras from the period leading up to plaintiff's fall showing the area of the floor on which she fell. We would expect counsel to recognize the applicability of the rule of *Gogos* requiring preservation of tapes for inspection, and to ensure that defendant's employee properly fulfilled that obligation. The wording of plaintiff's demand for "any and all video recordings/surveillance tapes/still photos of any nature that depict the subject slip and fall accident" does not justify the employee's reading plaintiff's demand so narrowly as to limit her task to copying only one clip of footage that recorded plaintiff falling.

Given the possibility that the jury could find that the destroyed recordings would have supported plaintiff's claim of a hazardous condition on the floor that was present long enough to give defendant notice of it, I would deny defendant's motion for summary judgment dismissing the complaint. The evidence defendant relied on to establish that there was no hazardous condition on the area of the floor on which plaintiff slipped did not establish as a matter of law a lack of a hazard or a lack of notice.