Estate of David Smalley v Harley-Davidson Motor Co. Group LLC (2019 NY Slip Op 01963)





Estate of David Smalley v Harley-Davidson Motor Co. Group LLC


2019 NY Slip Op 01963


Decided on March 15, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 15, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


978 CA 18-00293

[*1]ESTATE OF DAVID SMALLEY AND JUDITH SMALLEY, PLAINTIFFS-RESPONDENTS,
v
HARLEY-DAVIDSON MOTOR COMPANY GROUP LLC, DEFENDANT-APPELLANT. 






HARTER SECREST & EMERY LLP, ROCHESTER (PAUL BRITTON OF COUNSEL), AND QUARLES & BRADY LLP, MILWAUKEE, WISCONSIN, FOR DEFENDANT-APPELLANT.
LADUCA LAW FIRM, ROCHESTER (MICHAEL STEINBERG OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.


 Appeal from a judgment of the Supreme Court, Monroe County (William K. Taylor, J.), entered June 9, 2017. The judgment, among other things, awarded plaintiffs money damages as against defendant. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff Judith Smalley and her husband, David Smalley (collectively, plaintiffs), commenced this strict products liability action seeking damages for injuries they sustained while they were riding a motorcycle manufactured by defendant Harley-Davidson Motor Company Group LLC (Harley-Davidson). Harley-Davidson appeals from a judgment entered following a jury trial that awarded plaintiffs damages, and we affirm.
At the time of the accident, David was operating the motorcycle, a Harley-Davidson Ultra Classic Electra Glide purchased new by plaintiffs in 1999, with Judith seated behind him. David had been riding motorcycles for approximately 40 years and had never before been involved in an accident. According to David, the motorcycle unexpectedly lost power while he was navigating a curve in the road at approximately 45 miles per hour. Fearing that he and his wife might get struck from behind by vehicles traveling in the same lane of traffic, David steered the motorcycle off the road and planned to come to a gradual stop. While traveling on a grassy area adjacent to the road, the motorcycle hit a rut in the ground and flipped several times, throwing plaintiffs to the ground. Both plaintiffs sustained serious injuries.
Harley-Davidson contends that Supreme Court abused its discretion in refusing to give a spoliation charge at trial with respect to the allegedly defective motorcycle, which was salvaged by plaintiffs' insurance company approximately two months after the accident. We disagree. "On a motion for spoliation sanctions, the moving party must establish that (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the [evidence was] destroyed with a culpable state of mind,' which may include ordinary negligence; and (3) the destroyed evidence was relevant to the moving party's claim or defense" (Duluc v AC & L Food Corp., 119 AD3d 450, 451 [1st Dept 2014], lv denied 24 NY3d 908 [2014]; see Burke v Queen of Heaven R.C. Elementary Sch., 151 AD3d 1608, 1608-1609 [4th Dept 2017]).
Here, there is no evidence that plaintiffs sought the destruction of the motorcycle with the intention of frustrating discovery (see O'Reilly v Yavorskiy, 300 AD2d 456, 457 [2d Dept 2002]). Judith gave permission to the insurance carrier to salvage the motorcycle almost three years [*2]before plaintiffs commenced this action, while she was still in the hospital. This was also while David was in a coma, and well before plaintiffs received the recall notice from Harley-Davidson that prompted them to file suit. Moreover, as the court noted, to the extent that Harley-Davidson was prejudiced as a result of being unable to inspect the motorcycle following the accident, plaintiffs were equally prejudiced (see McLaughlin v Brouillet, 289 AD2d 461, 461 [2d Dept 2001]). Under the circumstances, we cannot conclude that the court abused its discretion in refusing to give a spoliation charge.
We reject Harley-Davidson's further contention that the court should have granted its motion for a directed verdict at the close of plaintiffs' proof. " A directed verdict pursuant to CPLR 4401 is appropriate when, viewing the evidence in [the] light most favorable to the nonmoving party and affording such party the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmovant' " (Clune v Moore, 142 AD3d 1330, 1331 [4th Dept 2016]; see Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]). Stated otherwise, a directed verdict should be granted only if it would be "utterly irrational" for the jury to render a verdict in favor of the plaintiff (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; see generally Mazella v Beals, 27 NY3d 694, 705 [2016]).
"In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer [or seller] breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107 [1983]). Here, plaintiffs alleged that their motorcycle was defectively designed because it had a 40-amp circuit breaker in its electrical system, rather than a 50-amp circuit breaker. Plaintiffs asserted that, athough the circuit breaker itself was not defective, the electrical system allegedly produced excessive amperages that caused the circuit breaker to trip and shut off the engine and that the problem was more likely to happen with a 40-amp circuit breaker.
Plaintiffs' evidence at trial established that the 2001, 2002 and 2003 models of plaintiffs' motorcycle were recalled by Harley-Davidson because, according to the recall notice, they had a "condition whereby the 40 Amp. main circuit breaker could open due to reasons other than that for which it was designed, causing an unexpected interruption of all electrical power to the motorcycle." Harley-Davidson later recalled the 1999 models that had an upgraded stator, but plaintiffs' motorcycle had the original stator and was thus not subject to the recall.
Plaintiffs called an expert at trial who testified that, although their 1999 model (without the upgraded stator) was not subject to the recall, it should have been because it was in all respects identical to the recalled 2001, 2002 and 2003 models that undisputedly had a design defect. According to the expert, plaintiffs' motorcycle had the same defect as those recalled models because they all had the same engine specifications and identical circuit breakers, batteries, regulators and alternators. The expert also opined that plaintiffs' 1999 model was identical in all relevant respects to the 1999 models with upgraded stators that were recalled. The only difference was the stators and, according to the expert, the lack of an upgraded stator did not make the 1999 model less prone to losing power. It is undisputed that the expert was qualified to give an opinion on those matters and, although defense counsel vigorously challenged the expert's opinions, there is nothing in the record that renders the expert's testimony incredible as a matter of law.
We note that, because plaintiffs offered evidence of a specific design defect through the testimony of their expert, it was not necessary for plaintiffs to exclude all other possible causes of the accident (see Speller v Sears, Roebuck & Co., 100 NY2d 38, 41 [2003]). In any event, plaintiffs did exclude the other possible causes by establishing that the motorcycle unexpectedly lost power while David was operating it.
Contrary to the contention of Harley-Davidson, the evidence presented by plaintiffs did not establish that the accident was caused by driver error. At trial, Harley-Davidson presented the theory that the accident was caused by rider error and that the engine did not shut off, as plaintiffs alleged. More specifically, Harley-Davidson asserted that David negligently or intentionally drove the motorcycle off the roadway because he failed to negotiate a curve in the road or because he wanted to pass vehicles that had slowed ahead of him. Harley-Davidson also suggests that the accident may have resulted from Judith leaning the wrong way while the [*3]motorcycle was negotiating the curve. Thus, according to Harley-Davidson, plaintiffs' expert, in rendering his opinion that a design defect existed, improperly relied on the "inaccurate" or "mistaken assumption" that the motorcycle lost power.
In support of its contention that plaintiffs' evidence established driver error, Harley-Davidson relies in part on statements David made to a deputy sheriff who responded to the scene of the accident. While laying on the ground injured, David told the deputy that, as he was entering the curved portion of the road, he "felt the weight of his passenger shift in the opposite direction." David did not tell the deputy that the motorcycle lost power. Harley-Davidson asserts that, if the motorcycle had lost power, David would surely have mentioned it to the deputy. However, plaintiffs' evidence also demonstrated that the deputy spoke to David for only 15 to 30 seconds while he and his wife were suffering from grievous injuries. Under the circumstances, the jury might well have concluded that David's primary concern at the time was not to give a full and complete accounting of the accident to the deputy.
Additionally, although plaintiffs introduced David's full deposition testimony, Harley-Davidson relies only on those portions of David's deposition in which he testified that he did not know whether the power shut off on the motorcycle. A review of the entire deposition testimony establishes that, immediately after answering "I don't know" to the question whether the engine shut off, David stated: "That's — I couldn't get it to do anything with the throttle and the gears were engaged . . . I didn't hear any clunks or anything, like I blew a rod or anything." David went on to state, "[t]here had to be a power failure or it wouldn't have shutdown like that. I don't know where it occurred." When counsel for Harley-Davidson reminded David that he had just said that he did not know whether the power shut off, David responded: "Really? How could I know? I'm not an engineer. I'm a rider and the bike was in dire straits. I had no control over it with the engine. We were on grass. My mind was not reading the bike, it was reading safety." David also stated that the motorcycle was not responding to "anything normal," and that he tried to restart it after it stalled, to no avail. He explained that the motorcycle could not have been running at the time of the accident because he had hit the restart button and did not hear the screeching noise that is heard when one turns on the ignition to a vehicle that is already running.
Further, plaintiffs presented the testimony of an eyewitness to the accident, who testified that he did not hear the motorcycle, which seemed odd to him because Harley-Davidson motorcycles make a lot of noise. The witness further testified that he did not see the headlight on plaintiffs' motorcycle, indicating that the engine had shut down. The witness had no interest in the outcome of the case and his testimony, although not dispositive, supports plaintiffs' claim that the engine shut down.
In sum, based on the evidence offered by plaintiffs, it cannot be said that it was irrational for the jury to conclude that plaintiffs experienced a "quit-while-riding" incident and that the stalling of the engine was a substantial factor in causing the accident and plaintiffs' resulting injuries. Nor was it irrational for the jury to accept the opinion of plaintiffs' expert that the motorcycle had a design defect due to its use of a 40-amp circuit breaker. We therefore conclude that the court properly denied Harley-Davidson's motion for a directed verdict and allowed the case to be decided by the jury.
We have reviewed Harley-Davidson's remaining contention and conclude that it lacks merit.
Entered: March 15, 2019
Mark W. Bennett
Clerk of the Court